TERRITORIAL COURT OF the
VIRGIN ISLANDS, Plaintiff,

v.

James R. RICHARDS, in his capacity as Inspector General, Office of Inspector General, U.S. Department of Interior,

and

Neal Littlefield, in his capacity as Regional Audit Manager, Caribbean Region, St. Thomas, V.I., Office of Inspector General, U.S. Department of Interior, Defendants.

Civ. No. 1987/24.

District Court, Virgin Islands,
D. St. Thomas and St. John.

Nov. 12, 1987.

Brenda J. Hollar, Leon Kendall, Gen. Counsel, Territorial Court of the U.S. Virgin Islands, Charlotte Amalie, St. Thomas, V.I., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Michael F. Hertz, Robert L. Ashbaugh, Attys., Civ. Div., U.S. Dept. of Justice, Washington, D.C., Terry M. Halpern, U.S. Atty., Charlotte Amalie, James S. Carroll III, Asst. U.S. Atty., Charlotte Amalie, St. Thomas, V.I., Thomas E. Robinson, Associate Sol., William S. Fields, U.S. Dept. of Interior, Washington, D.C., for defendants.

MEMORANDUM AND ORDER

DAVID V. O'BRIEN, District Judge.

We are asked to stay the enforcement pending appeal of a subpoena *duces tecum* directed to the Territorial Court of the Virgin Islands. Although we see little likelihood of success on appeal, and, therefore, little danger of irreparable harm, we believe the public interest weighs heavily in favor of granting the stay.

I. FACTS and PROCEDURAL
BACKGROUND

On October 21, 1987 this Court entered a Memorandum opinion and order enforcing a subpoena *duces tecum* issued by the de-

fendant, James R. Richards, Inspector General of the United States Department of Interior, ("Inspector"), and directed to the plaintiff, Territorial Court of the Virgin Islands. *See Territorial Court of the Virgin Islands v. Richards*, 673 F.Supp. 152 (D.V.I.1987) (*"Richards I"*). The subpoena was issued to force compliance with a proposed audit of the Territorial Court by the Inspector. At 155. The Territorial Court now moves pursuant to Fed.R.Civ.P. 62(c), (d) for a stay of our decision pending its appeal to the United States Court of Appeals for the Third Circuit. It also seeks a waiver of the appeal bond.

In its memorandum in support of this motion, the Territorial Court vehemently challenges the legal basis for the October 21, 1987 decision. It also accuses the Court of an improper motive in reaching its decision. While we expect a nonprevailing party to be disappointed, the virulence and vituperation contained in plaintiff's motion for a stay pending appeal exceeds permissible bounds. Sadly however, we note that this *ad hominem* argumentation has been characteristic of plaintiff's counsel during the entire case, especially towards the opposition.

As to its request for a stay, the Territorial Court centers on the need for the preservation of the *status quo*. It adds that the issue is not whether the Territorial Court can be audited, but who can do the auditing.[1]

The Inspector counters that the *status quo* need not be preserved because an appeal will not be mooted if the audit goes forward. The Inspector adds that a further delay in conducting the audit will harm his ability to "reconstruct accounts". He further suggests that it is in the public interest to have the results of the audit without delay.

## II. DISCUSSION

We must consider four factors in addressing an application for a discretionary stay: whether there is a strong likelihood of success on the merits of the appeal; whether the movant will suffer irreparable harm if the stay is not granted; whether a stay will impose substantial harm on the other interested parties; and whether a stay is in the public interest. *Atlantic Richfield Company v. Federal Trade Commission*, 398 F.Supp. 1, 17 (S.D.Tex. 1975) *aff'd*, 546 F.2d 646 (5th Cir.1977) (citations omitted).[2] Each of these elements ought to be applied flexibly according to the unique circumstances of the case. *McSurely v. McClellan*, 697 F.2d 309, 317 (D.C.Cir.1982), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). We will address each of the elements *seriatim*.

### A. *Likelihood of Success on Appeal*

This question would seem to require us to address the enforcement issue again. Obviously, we cannot conclude that the Territorial Court is likely to succeed on appeal without shedding doubt on our original opinion. On the other hand, one out of every ten appeals from rulings of this Court is successful. Perhaps plaintiff will fall within that ten percent.

At best, the question is whether the underlying decision to enforce is a close one. Given our view of the paramount role the federal government plays in territorial affairs, a situation which we do not necessarily endorse, we cannot help but conclude

---

1. Plaintiff's October 23, 1987 memorandum at 3.

2. The Territorial Court argues in its reply brief that it is entitled to a stay as a matter of law pursuant to Fed.R.Civ.P. 62(d). It cites Justice Rehnquist's in chambers opinion sitting as a Circuit Justice in *Becker v. United States*, 451 U.S. 1306, 101 S.Ct. 3161, 68 L.Ed.2d 828 (1981). However, we note that Justice Rehnquist's discussion of the issue was in dicta because he candidly admitted that he did not need to reach the issue of whether 62(c) or 62(d) applied. *Id.* at 1308–1309, 101 S.Ct. at 3162. In fact, Justice Rehnquist went on to balance the equities. *Id.* at 1311, 101 S.Ct. at 3164. Moreover, since he was sitting as a Circuit Justice, his decision does not carry the precedential value of an opinion of the United States Supreme Court. We also note that there is strong precedent holding to the contrary. *Donovan v. Fall River Foundry Co., Inc.*, 696 F.2d 524 (7th Cir.1982). In any case, our decision to grant the stay assuming 62(c) applies, forecloses the necessity of reaching the issue.

that plaintiff's likelihood of success is very slim indeed.

## B. *Irreparable Harm*

Some courts have found maintenance of the *status quo* a controlling factor in this analysis. *See e.g., Shick v. Farmers Home Administration*, 583 F.Supp. 534 (D.Mass.), *modified on other grounds*, 748 F.2d 35 (1st Cir.1984). Other courts have not, depending upon the circumstances of the case. *Boise Cascade Corporation v. Federal Trade Commission*, 498 F.Supp. 782, 783 (D.Del.1980); *Atlantic Richfield Co.*, 398 F.Supp. at 18.

In addition, the potential for mootness of an appeal absent a stay has been given great weight by some courts. *See e.g., NLRB v. General Motors Corp.*, 510 F.Supp. 341, 342 (S.D.Ohio 1980). While other courts believe such a consideration improper. *See e.g., Dellums v. Smith*, 577 F.Supp. 1456, 1458 (N.D.Cal.1984) (citations omitted).

Without adopting either position on these two questions, we find little merit in the Inspector's argument concerning mootness. It is true that *Gluck v. United States*, 771 F.2d 750, 753 (3d Cir.1985) suggests that an appeal is not mooted so long as relief can be granted. However, it is at best speculative to ponder in this particular case whether the future will leave a remedy available to the Circuit if necessary.

On the other hand, the Territorial Court, as it admits, cannot claim it is harmed by an audit *per se.* Thus, its argument for preservation of the *status quo* on this ground is shaky. Rather, we glean from its argument the notion that somehow the constitutional structure of our republic is harmed if a judicial branch agency of the territory of the Virgin Islands is audited by an executive branch agency of the federal government.

If we are incorrect, and the doctrine of separation of powers limits the Inspector's authority in the way suggested by the Territorial Court, then indeed there is some damage to our constitutional structure if the audit goes forward. However, we prefer to discuss such harm within our consideration of the public interest.[3]

## C. *Harm to the Inspector*

We do not perceive the degree of harm to the Inspector which he so strongly asserts will occur if the stay is granted. It was four years from the time he was statutorily permitted to audit the government of the Virgin Islands, to the time he sought to audit the Territorial Court. *Richards I*, at 154–55. While it may be true that his task grows more difficult with each delay, there is nothing in the record which suggests that an audit must be conducted with exigency. There is no allegation that the affairs of the Territorial Court are in anything but proper order, nor is there evidence that a delay in the audit pending appeal would alter the circumstances. Thus, we find it hard to believe that the Inspector's affairs are compromised by an additional delay, probably measured to be several months.

## D. *Public Interest*

The question before us in *Richards I* was one of first impression. Neither the Inspector nor the Territorial Court referred us to any case which shed light on the relationship between the federal government and its territories vis-a-vis the doctrine of separation of powers. Indeed, our research found none directly on point. Thus, although we viewed the Territorial

---

**3.** It is true that interference with a constitutional right is considered an irreparable injury. *West Indian Company, Ltd. v. Government of the Virgin Islands,* 643 F.Supp. 869, 883 (D.V.I.1986) *aff'd,* 812 F.2d 134 (3d Cir.1987) (citations omitted). The doctrine of separation of powers, however, is not a constitutional right similar for example, to free exercise rights. Rather it is a constitutional principle. *Buckley v. Valeo,* 424 U.S. 1, 120, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1975) (*per curiam*). The primary purpose of the doctrine is to protect the *people* from oppression. *Consumer Energy Council of America v. F.E.R.S.,* 673 F.2d 425, 471 (D.C.Cir.1982) *aff'd,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1403 (1983) (emphasis mine). In the unique circumstances of this case, therefore, it is the people who will most directly suffer if the Territorial Court is unconstitutionally audited.

Court's defenses as meritless, it was still a unique issue.

The people of the Virgin Islands have a strong interest in having the relationship of the respective levels of government clearly defined. This is especially true since it appears that the unincorporated status of this territory is unlikely to change in the foreseeable future.

While it may be true that the people of this territory have an interest in seeing a proper audit of its government done with dispatch, we are impressed with the argument that the application of the proper rule of law carries greater import. The issue as the Territorial Court suggests, is: who may constitutionally audit the Territorial Court. While our decision in *Richards I* holds that the Inspector may constitutionally do so; at 161, we are not unmindful that the Territorial Court also asserts that Congress has statutorily required the Administrative Office of the United States Courts to be the agency charged with such responsibilities. At 159–60. We find no merit in this statutory interpretation. At 159–61.

Nevertheless, because the question is one where the Third Circuit's review is plenary, and there is an inherent public interest in the application of the proper law, especially where the question involves the constitutional assignment of power, we believe that the interests weigh heavily in maintaining the *status quo* until the Circuit addresses this case of first impression. Other courts have thought likewise. *See e.g., First Amendment Coalition v. Judicial Inquiry and Review Board*, 584 F.Supp. 635, 638 (E.D.Pa.1984).

### III. CONCLUSION

The appeal of our decision in *Richards I* does not seem to us to have much hope of success. In addition we are hard pressed to find an explicit injury to the Territorial Court absent a stay. Nevertheless, the unique circumstances of this case suggest that a delay pending appeal poses little threat of harm to the Inspector, and that there is a strong public interest in maintaining the *status quo* pending word from the Circuit on this issue. For these rea-

sons the stay will be granted. We also see little need for an appeal bond. It will be waived.