PLANNED PARENTHOOD OF SOUTH-EASTERN PENNSYLVANIA, Reproductive Health and Counseling Center, Women's Health Services, Inc., Women's Suburban Clinic, Allentown Women's Center, and Thomas Allen, M.D., Plaintiffs,

v.

Robert P. CASEY, N. Mark Richards, Ernest D. Preate, and Michael D. Marino, Defendants.

Civ. A. No. 88–3228.

United States District Court, E.D. Pennsylvania.

May 12, 1993.

Pepper Hamilton & Scheetz, Sharon J. Phillips, Linda J. Wharton, Susan Frietsche, Women's Law Project, Seth Kreimer, Philadelphia, PA, Roger K. Evans, Kathryn Kolbert, New York City, for plaintiffs.

Kate L. Mershimer, Deputy Atty. Gen., Office of Attorney General, John G. Knorr, III, Chief Deputy Atty. Gen., Ernest D. Preate, Jr., Harrisburg, PA, for defendants.

## MEMORANDUM & ORDER

HUYETT, District Judge.

This constitutional challenge to numerous provisions of the 1988 and 1989 amendments to the Pennsylvania Abortion Control Act

**230**

("the amended Act"), 18 Pa.Cons.Stat. §§ 3201–3220, is back before this Court on remand from the Supreme Court of the United States and the Court of Appeals for the Third Circuit. Plaintiffs have moved to reopen the record so that they may introduce additional evidence to satisfy the burden of proof required by the new "undue burden" standard recently announced by the Supreme Court.[1] Plaintiffs also request that this Court continue the existing permanent injunction enjoining sections 3205, 3206, 3207(b), 3214(a)(1), 3214(a)(8), 3214(a)(10), 3214(a)(11) and 3214(f) of the amended Act. In addition, plaintiffs request an order permanently enjoining defendants from enforcing section 3210(a) in a manner inconsistent with this Court's opinion of August 24, 1990, and an order permanently enjoining defendants from enforcing the term "medical emergency" in a manner inconsistent with the court of appeals' broad interpretation of that term as set forth in its opinion of October 21, 1991.

Defendants oppose each of plaintiffs' requests and contend that the existing permanent injunction should be lifted immediately, except in respect to sections 3209 and 3214(a)(12), the spousal notification provisions, which both parties agree should be permanently enjoined.

For the reasons set forth in the accompanying memorandum, plaintiffs' motions to reopen the record and to continue the existing injunction shall be granted and plaintiffs' requests for further injunctive relief shall be denied.

## I. INTRODUCTION

In *Planned Parenthood v. Casey*, 744 F.Supp. 1323 (E.D.Pa.1990), many provisions of the amended Act were held unconstitutional and enforcement of those provisions was permanently enjoined. The Court of Appeals for the Third Circuit reversed in part and affirmed in part that judgment, holding all of the challenged provisions constitutional with the exception of the spousal notification

provision. *Planned Parenthood v. Casey*, 947 F.2d 682 (3d Cir.1991).

The United States Supreme Court in turn affirmed in part and reversed in part the judgment of the court of appeals, holding the challenged provisions constitutional on the record before it, with the exception of the spousal notification provision and its related reporting requirements. *Planned Parenthood v. Casey*, —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In its decision, the Supreme Court substantially altered the legal framework that this Court relied upon in judging the constitutionality of the amended Act by explicitly rejecting both the strict scrutiny standard of review and the trimester framework set forth in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See Planned Parenthood v. Casey*, —— U.S. ——, ——, 112 S.Ct. 2791, 2820, 120 L.Ed.2d 674 (1992). In place of the established standards announced in *Roe v. Wade*, the Supreme Court adopted the new, less protective "undue burden" standard, under which a law regulating abortion is invalid if found to have "the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.*

The case is now before this Court on remand for "such further proceedings as may be appropriate." *Planned Parenthood v. Casey*, 978 F.2d 74, 78 (3d Cir.1992). Plaintiffs argue that pursuant to the remand orders and mandates of both the Supreme Court and the court of appeals, this Court should exercise its discretion to reopen the record to hear additional evidence so that they may have an opportunity to meet the more rigorous burden of proof imposed by the newly announced undue burden standard.

Plaintiffs claim that reopening the record on remand is warranted "where additional testimony would be pertinent to [an intervening] change of law," *Skehan v. Board of Trustees*, 590 F.2d 470, 479 (3d Cir.1978) (citing 6A James W. Moore et al., *Moore's Federal Practice* ¶ 59.04[13] (2d ed. 1974)), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62

---

**1.** Plaintiffs alternatively sought to stay this case pending the Supreme Court's resolution of *Barnes v. Moore*, 970 F.2d 12 (5th Cir.1992). However, the Supreme Court denied certiorari in

*Barnes* while plaintiffs' motion was pending, —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 582 and plaintiffs have withdrawn this request.

L.Ed.2d 41 (1979), or where the taking of additional testimony "would insure substantial justice." *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891, 895 (3d Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). Plaintiffs urge this Court to exercise its discretion to take additional testimony, arguing that the Supreme Court's opinion and remand order clearly support reopening the record. According to plaintiffs, the Supreme Court carefully limited its conclusions regarding the constitutionality of the various provisions under the new standard to the record before it and issued a broad remand order directing further "proceedings consistent with this opinion." *Id.,* ——— U.S. at ———, 112 S.Ct. at 2833. Further, plaintiffs claim that the court of appeals' actions support reopening the record in that it specifically rejected the Commonwealth's request to brief at the circuit level whether reopening the record was proper, holding that the issue "is not a matter for our court, at least at this time." *Planned Parenthood v. Casey,* 978 F.2d 74, 78 (3d Cir.1992).

In response, defendants contend that granting plaintiffs' motion to reopen the record would be wholly inappropriate because nothing in either appellate court's opinion or mandate directed such action on remand. In fact, defendants argue, to reopen the record would be flatly contrary to the mandates of the Supreme Court and the court of appeals, for those courts have held the challenged provisions constitutional and have entered judgment to that effect. Further, defendants claim that plaintiffs are judicially estopped from arguing that they need to reopen the record to offer additional evidence because until now they have taken the position that the evidence they had submitted proved that the challenged positions were unconstitutional under any standard. Similarly, defendants contend that plaintiffs have waived their opportunity to submit evidence to prove the challenged provisions unconstitutional under the undue burden standard because they chose not to do so in prior proceedings.

The decision of whether this Court should grant plaintiffs' motion and reopen the record, therefore, can be segregated into three separate inquiries: (1) whether a district court has the power to reopen the record of a case on remand without specific instructions from the appellate court to that effect; (2) if so, whether this Court may reopen the record in light of the appellate courts' mandates and the history of the case; and (3) if this Court can reopen the record, whether it should exercise its discretion to do so. I shall treat each of these inquiries in turn, and because I find that the answer to each is yes, I shall then address plaintiffs' requests for further injunctive relief.

## II. DISCUSSION

### A. *The Power of a District Court to Reopen the Record*

■■■ The question of whether to reopen the record is a matter for the sound discretion of a trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891, 894 (3d Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). A court may exercise this discretion to reopen the record when an intervening change of law has occurred while an action is pending, *Skehan v. Board of Trustees,* 590 F.2d 470, 479 (3d Cir.1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979), or in any other situation in which justice requires that additional proof be heard. *Rochez,* 527 F.2d at 895.

■■■ Although defendants acknowledge that a district court has the power to reopen the record in the above situations, they claim that an exercise of this discretion is improper when an appellate court has not specifically remanded for reconsideration of the issue for which additional testimony is needed. Accordingly, defendants argue that plaintiffs' reliance on *Skehan* and *Rochez* is misplaced because, in both cases, the Third Circuit held that it was within the district court's discretion to decide whether to reopen the record on issues that it had specifically remanded for reconsideration.

Similarly, defendants assert that when the Supreme Court wants additional evidence or arguments considered on remand, it states so

expressly. *See, e.g., Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2901–02, 120 L.Ed.2d 798 (1992); *United States v. Fordice,* —— U.S. ——, ——, ——––——, 112 S.Ct. 2727, 2738, 2742–43, 120 L.Ed.2d 575 (1992). According to defendants, since the appellate courts did not specifically remand for reexamination of the constitutionality of the challenged provisions or for the taking of additional evidence, it would be improper for the trial court to exercise its discretion to reopen the record on this issue.

Defendants' reasoning leads to an anomalous conclusion: although a decision to reopen the record is left to the sound discretion of the trial court, the exercise of that discretion must be "pre-approved" by the remanding appellate court. This result is clearly incorrect in light of the well-settled principle that on remand, a trial court is free to make any order that is not inconsistent with the appellate decision as to any question not settled by that decision. *Delgrosso v. Spang & Co.,* 903 F.2d 234, 240 (3d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). In fact, on remand a trial court "may consider, *as a matter of first impression,* those issues not expressly or implicitly disposed of by the appellate decision." *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 950 (3d Cir.1985) (emphasis added).

 Hence, the failure of the court of appeals and the Supreme Court to specifically instruct the trial court to take further evidence or to reexamine the amended Act's constitutionality on a supplemented record does not preclude this Court from taking such action. Instead, the appellate courts' "failure to specify that further evidence should be taken on remand could, at most, be construed as leaving a decision on the need to reopen the record to the sound discretion of the trial court." *Skehan,* 590 F.2d at 478. Unless the appellate courts have definitively ruled, either explicitly or impliedly, on the issues plaintiffs wish to address with their new evidence, this Court has the power to reopen the record.

### B. *The Appellate History of this Action*

Having answered the first inquiry—whether a district court has the authority to reopen the record without specific direction from the appellate court—in the affirmative, I shall now address whether anything in the history of this litigation precludes this court from exercising that authority. Defendants assert that the appellate courts' decisions and mandates preclude granting plaintiffs' motion because both courts have already ruled on the statute's constitutionality, and a lower court cannot reconsider matters already decided by a higher court. Further, defendants claim that plaintiffs should be judicially estopped from seeking to reopen the record and that they have waived the issue they now wish to address. Finally, defendants contend that because plaintiffs' challenge is a facial challenge to the amended Act, hearing more evidence would not be helpful because the Supreme Court has held that the challenged provisions, except for the spousal notification provisions, can be applied constitutionally. *Barnes v. Moore,* 970 F.2d 12 (5th Cir), *cert. denied,* —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992).

### (1) *Whether the Appellate Courts' Mandates Prohibit This Court From Reopening the Record*

 As defendants correctly assert, it is patently clear that on remand a lower court may not review the decision of a higher court. *Briggs v. Pennsylvania R.R.,* 334 U.S. 304, 306–07, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948); *Gaines v. Rugg,* 148 U.S. 228, 13 S.Ct. 611, 37 L.Ed. 432 (1893). Accordingly, a lower court with jurisdiction over a case on remand under a Supreme Court mandate cannot reconsider matters decided by the Supreme Court. *Banco National de Cuba v. Farr,* 383 F.2d 166, 177 (2d Cir. 1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968). This fundamental principle, known as the "law of the case" doctrine, was recently described by the Third Circuit:

It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed with the mandate and the law of the case as established on appeal. A trial court must imple-

ment both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

*Blasband v. Ralés,* 979 F.2d 324, 327 (3d Cir.1992) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir.1985)).

Defendants contend that since both the Third Circuit and the Supreme Court have reviewed the challenged provisions and held them constitutional, this court has no authority to revisit that holding or question the law of this case. According to defendants, the plaintiffs' motion to reopen the record is nothing more than a request for an impermissible "de facto reversal" of the court of appeals' and Supreme Court's judgments on the challenged provisions' constitutionality. *Blasband,* 979 at 328.

Were defendants correct in their assessment that plaintiffs are simply requesting a reevaluation of the constitutionality of the challenged provisions on the existing record, this Court would have no choice but to deny plaintiffs' motion. Both the Supreme Court and the Third Circuit have considered the existing evidence and on that record found all of the challenged provisions constitutional, save the spousal notification provision. Obviously, as defendants argue, that finding is binding on this Court, and this Court has no authority to revisit it.

However, although defendants' reasoning is sound, their argument must fail because they misconstrue the essence of plaintiffs' motion. Plaintiffs concede, as they must, that on the existing record, the challenged provisions of the amended Act, except for the spousal notice provisions, are constitutional. However, plaintiffs claim that they can supplement the record with new evidence—evidence that was not necessary under the less rigorous strict scrutiny standard—that will show that the challenged provisions are unconstitutional under the new undue burden standard.

Thus, the precise issue that plaintiffs now wish this Court to address is whether their new evidence establishes that the challenged provisions have the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus, not whether the old record supports such a finding. Clearly, the appellate courts in this action could not have addressed this precise issue, either expressly or impliedly, for they had only the existing record to consult in their constitutional evaluation of the challenged provisions. Therefore, it cannot be said that anything in the decisions or the mandates of the Supreme Court and Third Circuit precludes this Court from reopening the record on the ground that to do so would be to enter a "de facto reversal."

The law of this case as established on appeal would not be disturbed, or in any way affected, should this Court reopen the record to address the precise issue plaintiffs have addressed in their motion. To the contrary, it is well settled that on remand a trial court may address any issue not expressly or impliedly addressed on appeal. *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir.1985). In sum, because the precise issue that plaintiffs wish to address in this Court was not addressed on appeal, nothing in the decisions or mandates of the appellate courts precludes the reopening of the record in this action.

### (2) *Judicial Estoppel/Waiver*

Defendants' next claim is that plaintiffs are judicially estopped from seeking to reopen the record because they have consistently argued that the record as it stands supports a finding of unconstitutionality. The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. *Delgrosso v. Spang and Co.,* 903 F.2d 234, 241 (3d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990).

This argument fails for two reasons. First, plaintiffs' present position does not contradict their previous assertions. In their post-trial briefing and on appeal, plaintiffs argued that the trial record supported a finding of unconstitutionality under any standard. The position plaintiffs now take is that they can prove that the challenged provisions create an undue burden if allowed to present new evidence. This position is completely

distinct from their prior arguments, as it is based on what will presumably be a whole new body of proof. In essence, plaintiffs' prior assertions that the existing record supported a finding of unconstitutionality under the undue burden standard, or any standard, is wholly irrelevant to whether a new record would support that finding.

■ Second, even if this court were to hold plaintiffs accountable for previously taking the position that their proof satisfied the undue burden standard as it was understood at the time, they would not be estopped from claiming unconstitutionality under the undue burden standard as it stands today. The definition of the undue burden standard as asserted by the parties and applied by the Third Circuit in this case turned out to be significantly different than that recently announced by the Supreme Court. The version of the test that the court of appeals applied was Justice O'Connor's narrow formulation from *Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 464, 103 S.Ct. 2481, 2510, 76 L.Ed.2d 687 (1983), which defined an undue burden as an "absolute obstacle or severe limitation on the abortion decision." As previously discussed, the standard now requires proof that a regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking the abortion of a nonviable fetus. *Casey,* —— U.S. at ——, 112 S.Ct. at 2820. Clearly, plaintiffs' prior arguments addressing a different standard should not prevent them from now addressing a new standard.

■ Defendants also cite *EEOC v. Westinghouse Electric Corp.,* 925 F.2d 619 (3d Cir.1991), in support of the estoppel argument, although this case supports a slight variation of that argument. This variation is more aptly described as the "waiver" argument, in that defendants seem to contend that plaintiffs already plead but chose not to prove the same facts they seek to prove now, thus waiving their chance to do so. Defendants claim that like the plaintiffs in *EEOC v. Westinghouse,* plaintiffs here were derelict in not putting forth all of their evidence in the first trial, considering they plead that the challenged provisions imposed "direct, substantial, and undue burdens in the exercise

by women" to choose abortions (Amended Complaint ¶ 106). According to defendants, plaintiffs should not be given a "second bite of the apple" and allowed to try again to prove what they should have proved before.

In *EEOC v. Westinghouse,* the Third Circuit refused a request for a remand to take additional evidence in a case in which an intervening change of law occurred because the moving party had waived its opportunity to put forth the requested proof. *Westinghouse,* 925 F.2d at 631. The court refused the request for additional evidence because it found that the intervening change in law did not introduce any new concept of proof, and the moving party's previous burden of proof involved the same elements as those required by the new law. *Id.* at 632. In addition, the moving party had conceded at trial that they could not satisfy one of the crucial elements of proof required by the new law. *Id.* at 631.

In contrast to *Westinghouse,* plaintiffs in the instant case face a very different burden of proof than they originally anticipated—or attempted to satisfy—and plaintiffs have never conceded that the Abortion Control Act does not put an undue burden on a woman's right to an abortion. As for defendants' claim that plaintiffs were derelict in not putting forth all of their evidence at the first trial, an effort to prove the challenged provisions were an undue burden at the first trial would have no bearing on plaintiffs' current burden, as the current undue burden standard was not the law of the land at the time of trial. In fact, the plurality of the Supreme Court who joined in Justice O'Connor's opinion acknowledged that the concept of undue burden had not previously been clearly established. *Casey,* —— U.S. at ——, 112 S.Ct. at 2820 ("the concept of undue burden has been utilized by the Court ... in ways that could be construed as inconsistent"). Plaintiffs cannot now be penalized for failing to predict a change in a legal standard which even the Supreme Court recognized as unsettled. *Id.,* —— U.S. at ——, 112 S.Ct. at 2820–21.

### (3) *Additional Evidence in a Facial Challenge*

■ Defendants also contend that plaintiffs' request to present more evidence

must be denied because their challenge to the amended Act is a facial challenge, thus further evidence would not be helpful. Ordinarily, to prevail on a facial challenge, plaintiffs would have to prove that no set of circumstances exist under which the law could be applied constitutionally. *See United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Defendants assert that in light of the Supreme Court's holding in this case that the challenged provisions, except the spousal notification provision, are constitutional on the existing record, further evidence could not change the finding that the amended Act can be applied constitutionally. *See Barnes v. Moore,* 970 F.2d 12 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992) (finding that Supreme Court's holding in *Casey* that Pennsylvania law, which contained essentially identical provisions as Mississippi law, could be applied constitutionally precluded the need for additional evidence in facial challenge to Mississippi law).

The weakness in this argument is that the analysis of the Supreme Court in *Casey* was clearly not a typical facial challenge analysis similar to that conducted in *Salerno.* Instead of inquiring if any situation existed in which the law could be applied constitutionally, the Court conducted a very fact specific analysis of the law as applied. The Court explained:

> Legislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. . . . The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant. . . .

*Casey,* —— U.S. at ——, 112 S.Ct. at 2829. In fact, Justice O'Connor recently issued a concurring opinion in which she clarified the proper analysis:

> In striking down Pennsylvania's spousal-notice provision, we did not require petitioners to show that the provision would be invalid in *all* circumstances. Rather, we

made clear that a law restricting abortions constitutes an undue burden, and hence is invalid, if, 'in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion.'

*Fargo Women's Health Org. v. Schafer,* —— U.S. ——, —— – ——, 113 S.Ct. 1668, 1669, 123 L.Ed.2d 285 (1993) (citation omitted) (emphasis in original).

In light of the analysis the Court conducted in *Casey,* further evidence could be helpful if it showed that the challenged provisions place an undue burden on the women to whom the law is relevant. Therefore, plaintiffs' motion to reopen will not be denied simply because the Supreme Court has held that the challenged provisions can be applied constitutionally.

C. Whether to Exercise the Discretion to Reopen Record

■ Having found that this Court has the authority to reopen the record on remand and that nothing in the appellate history of this case precludes the exercise of that authority, I shall now address whether I should exercise my discretion to open the record and receive more evidence.

■ In deciding whether to reopen the record, a court should consider the following factors: (1) fairness and the possibility of undue prejudice to the movant resulting from failure to take more evidence, (2) judicial economy, and (3) the burden that reopening would put on the parties and their witnesses. *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891, 894 n. 6 (3d Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976); *see also Pittsburgh Press Club v. United States,* 579 F.2d 751, 755 (3d Cir.1978).

Consideration of fairness and the possibility of undue prejudice compels a decision to reopen the record in this case. Plaintiffs litigated this case in accordance with the law of the land at the time of trial, which was the strict scrutiny framework of *Roe v. Wade.*[2]

---

2. The court of appeals in this action was the first court to hold that the Supreme Court had already overruled *Roe* by abandoning the strict

scrutiny standard in *Webster v. Reproductive Health Services,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) and *Hodgson v. Minneso-*

In ruling on the challenged provisions in this case, the Supreme Court carefully limited its conclusions to the record before it, acknowledging that on a different record different conclusions could be reached. *Casey,* — U.S. at — – —, 112 S.Ct. at 2824–33.[3] Plaintiffs claim that they will present evidence that shows that the amended Act has the purpose and effect of putting a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus, proof that was not necessary under prior law. To deny them this opportunity would be fundamentally unfair, as plaintiffs have essentially had the rules of the game changed while in the midst of play.

Further, undue prejudice would most certainly occur to plaintiffs if this Court denies their motion and, in a later challenge, the amended Act is found unconstitutional under the new standard. Women who were deterred from exercising their right in the interim period would suffer unnecessary and irreparable harm, considering the temporary nature of a woman's ability to exercise her constitutional right to choose an abortion.

The values of judicial economy would also be best served by a decision to reopen the record. Should this Court decline to reopen the record and address the constitutionality of the amended Act under the new standard in this action, the prospect of multiple and duplicative lawsuits would become very real. Potentially, hosts of individual cases in both the state criminal system and federal judiciary would be filed addressing the very issue that this Court could definitively decide in three months. A single decision that determines the constitutionality of the amended Act under the new constitutional standard in one, streamlined challenge is surely more efficient than many different challenges, or even than just one new facial challenge which would not have the advantage of a substantial existing record.

Finally, the primary burden of reopening the record would fall on plaintiffs, the moving parties, who would bear the heavy burden of proving that the challenged provisions operate to place an undue burden on a woman's right to choose an abortion of a nonviable fetus. At oral argument on this motion, plaintiffs requested a short discovery period of sixty to ninety days and a very brief trial. (Oral Argument 3/19/93, Tr. at 42). Although reopening the record would obviously require defendants to respond to plaintiffs' new proof, the minor burden on defendants from this brief period of additional discovery and trial is simply not significant enough to outweigh the notable concerns which support reopening the record.

### D. Continuation of the Existing Injunction

■ On August 24, 1990, this Court issued a permanent injunction enjoining enforcement of sections 3205, 3206, 3207(b), 3214(a)(1), 3214(a)(8), 3214(a)(10), 3214(a)(11) and 3214(f) of the amended Act. Plaintiffs request that this injunction be continued until the constitutionality of the challenged provisions under the new undue burden standard is ultimately decided, which they assert will occur after a very brief trial in sixty to ninety days. Defendants urge the Court to lift the existing injunction, except as to sections 3209 and 3214(a)(12), because the challenged provisions have been held constitutional, therefore rendering the present injunction invalid.

---

*ta,* 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990). That conclusion may have been premature, however, for in *Casey,* the Supreme Court recognized that *Webster* had not rejected the *Roe* standard since in *Webster* "a majority of the court either decided to reaffirm or declined to address [*Roe's*] constitutional validity." — U.S. at —, 112 S.Ct. at 2810.

**3.** Specifically, in upholding the twenty-four hour waiting period, the Court found the district court's findings "troubling" and upheld the provision "on the record before [the Court]." *Casey,*

— U.S. at —, 112 S.Ct. at 2826. Similarly, in upholding the physician-only counseling provisions of § 3205, the joint opinion emphasized that "there is no evidence on this record that [the provision would amount in practical terms to a substantial obstacle ..." *Id.,* — U.S. at —, 112 S.Ct. at 2824. Further, in upholding the record keeping and recording requirements, the plurality stated that "[w]hile at some point increased cost could become a substantial obstacle, there is no such showing on the record before us." *Id.,* — U.S. at —, 112 S.Ct. at 2833.

A trial court has broad discretion to preserve the status quo and grant interim injunctive relief as long as a balancing of equities supports it. *See, e.g., McClatchy Newspapers v. Central Valley Typographical Union,* 686 F.2d 731, 734 (9th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *see generally* 7 James W. Moore et al., *Moore's Federal Practice* ¶ 62.05, at 62–20 (1992) (describing wide and flexible "inherent power of the court to exercise its discretion to preserve the status quo when circumstances so warrant"). At least one court has exercised this broad equitable power to delay lifting an injunction in order to preserve the status quo after a higher court has ruled against the party moving for an extension of the injunction. *Rust v. Sullivan,* No. 88–6204/06 (2d Cir. July 22, 1991) (order granting plaintiffs' request for a temporary stay of mandate pending congressional action despite Supreme Court's holding that regulations at issue were valid).

In determining whether to grant interim injunctive relief to preserve the status quo, this Court must balance the equities and weigh the standard considerations for injunctive relief. *Territorial Court of the Virgin Islands v. Richards,* 674 F.Supp. 180, 181 (D. V.I.1987) (granting stay pending appeal); *First Amendment Coalition v. Judicial Inquiry and Review Board,* 584 F.Supp. 635, 637 (E.D.Pa.1984), *vacated on other grounds,* 784 F.2d 467 (3d Cir.1986). Specifically, a party moving for interim injunctive relief must show (1) that irreparable injury will result if injunctive relief is denied, (2) that other parties will not be substantially harmed by the injunction, (3) that the public interest will be served by granting the injunction, and (4) that the moving party is likely to succeed on the merits. *Id.* at 637–38 (quoting *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir.1970), *aff'd,* 436 F.2d 1116 (4th Cir.1971)).

That irreparable harm would occur in this action if the injunction is lifted and the amended Act is later proven unconstitutional under the undue burden standard is certain. Irreparable harm is "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989). As previously discussed, because of the impermanent nature of a woman's opportunity to exercise her right to choose an abortion, an erroneous delay or denial of the chance to exercise that right cannot later be redressed.

In contrast, defendants will not suffer any significant harm should this Court decide to continue the existing injunction for two to three months of discovery and a few days of trial. *See First Amendment Coalition,* 584 F.Supp. at 638 n. 5 (few months of additional delay in obtaining transcripts outweighed by irreparable harm to moving party). There is considerable doubt as to whether the Commonwealth is even prepared to implement the procedures required by the amended Act, an issue which defendants skirted at oral argument and failed to address in their supplemental briefing regarding injunctive relief. Although defendants are correct that the Commonwealth's lack of preparedness would not authorize a federal court to enjoin the challenged provisions, it is relevant because it would support a finding that in practical terms, a three month delay would not cause harm to defendants. In any event, even if defendants could show that the Commonwealth is prepared to implement the Act immediately, a minor three month delay in lifting the injunction would still be warranted when weighed against the potential harm that erroneous application of the law could cause to plaintiffs.

Consideration of the public interest also weighs heavily in favor of maintaining the status quo while additional evidence is gathered and tried, for the challenged provisions of the amended Act will affect a large number of women when and if they are implemented. Obviously, ensuring that the law as applied to these women is constitutional serves the public interest, as there is "an inherent public interest in the application of the proper law." *Territorial Court of the Virgin Islands,* 674 F.Supp. at 183. While defendants are correct in asserting that the public has an interest in seeing a constitutional law go into effect, assurance that the law is indeed constitutional—especially in an unsettled area of the law—carries greater import. *Id.*

 The final factor to be considered, plaintiffs' likelihood of success on the merits, does not weigh as heavily in favor of reopening the record as the preceding three factors. To succeed in a new trial, plaintiffs must present new evidence that proves that the challenged provisions have the purpose or effect of placing a substantial obstacle in the path of a woman seeking to abort a nonviable fetus. *Casey*, — U.S. at —, 112 S.Ct. at 2820. In an attempt to show a reasonable likelihood that they can satisfy this burden, plaintiffs have submitted various affidavits and documentary evidence which supplement the current record, addressing issues such as the inadequacy of public transportation in rural counties, the use of the waiting period for purposes of stalking and harassment, and the pro-life campaign against abortion providers. In addition, plaintiffs offer legislative history and point to the General Assembly's repeated efforts to enact and reenact unconstitutional abortion restrictions, alleging that the legislature's purpose in enacting the amended Act was to place a substantial obstacle in the path of a woman seeking an abortion.[4] Plaintiffs' most recent factual submissions, taken as true since defendants have not challenged them factually, support at least a plausible likelihood that plaintiffs will succeed at trial.[5]

A balancing of the equities and consideration of the standard factors involved in a decision on an injunction leads to the conclusion that a grant of interim injunctive relief is warranted in the unique circumstances of this case. Accordingly, plaintiffs' motion for a continuation of the existing injunction shall be granted.

**E. Other Relief Requested by Plaintiffs**

In their original motion to reopen, plaintiffs request an order permanently enjoining the Commonwealth from enforcing section 3210(a) in a manner that is inconsistent with this Court's Order of August 24, 1990, and from enforcing the term "medical emergency" in section 3203 in a manner that is inconsistent with the broad interpretation of the term set forth in the court of appeals' opinion of October 21, 1991.

At oral argument counsel for plaintiffs acknowledged that the sole purpose of these requests was to clarify "what has happened thus far" in this case, and counsel agreed to withdraw the requests if the Court had any objection. (Oral Argument 3/19/93, Tr. 43–44). As the requested "clarification" is wholly unnecessary, plaintiffs' requests are denied.

**III. CONCLUSION**

For the reasons stated above, plaintiffs' motions to reopen the record and to continue the existing injunction shall be granted and plaintiffs' request for a clarifying order concerning section 3210(a) of the amended Act and the definition of medical emergency shall be denied. In addition, sections 3209 and 3214(a)(12), the spousal notification provisions of the amended Act, shall be permanently enjoined.

An appropriate order follows.

**ORDER**

Upon consideration of plaintiffs' motion to reopen the record, defendants' response, the parties' supplemental briefing on the propri-

---

4. Defendants argue that in determining legislative intent, this court cannot look beyond the stated purpose as unambiguously set forth in the amended Act itself. *Norfolk & Western v. American Train Dispatchers*, 499 U.S. 117, —, 111 S.Ct. 1156, 1163 (1991). However, it is well settled that when inquiring into the legislative purpose in a constitutional challenge, courts can and do reach beyond the face of a statute. "While the Court is normally deferential to a State's articulation of ... purpose, it is required that the statement of such purpose be sincere and not a sham." *Edwards v. Aguillard*, 482 U.S. 578, 586–87, 107 S.Ct. 2573, 2579, 96 L.Ed.2d 510 (1987). A court may find improper purpose behind a statute by examining the statute on its

face, its legislative history, the historical context of the statute and the specific sequence of events leading to passage of the statute. *Id.* at 594–95, 107 S.Ct. at 2583.

5. The fact that plaintiffs' new proof does not clearly support a finding of *probable* likelihood of success is not fatal to their motion, as the other factors tip the balance of equities in favor of continuing the injunction in spite of the weakness of this factor. *See Territorial Court of the Virgin Islands*, 674 F.Supp. at 180, 182 (granting stay despite finding that moving party's likelihood of success "is very slim indeed").

ety of continuing the existing injunction, and for the reasons stated in the accompanying memorandum:

1. Plaintiffs' motion to reopen the record is GRANTED. A procedural order governing discovery and setting a trial date shall be forthcoming.

2. Plaintiffs' motion for a continuation of the existing injunction is GRANTED. Sections 3205, 3206, 3207(b), 3214(a)(1), 3214(a)(8), 3214(a)(10), 3214(a)(11) and 3214(f) of the amended Act shall remain enjoined during these proceedings, as set forth in this Court's Order of August 24, 1990.

3. Plaintiffs' request for an order enjoining the Commonwealth from enforcing section 3210(a) in a manner that is inconsistent with this Court's Order of August 24, 1990, and from enforcing the term "medical emergency" in section 3203 in a manner that is inconsistent with the broad interpretation of the term set forth in the court of appeals' opinion of October 21, 1991, is DENIED.

4. Sections 3209 and 3214(a)(12) of the amended Act are permanently enjoined.

IT IS SO ORDERED.