PLANNED PARENTHOOD OF SOUTHEASTERN
PENNSYLVANIA ET AL. *v.* CASEY ET AL.

No. A–655.   Decided February 7, 1994

JUSTICE SOUTER, Circuit Justice.

Addressing me in my capacity as Circuit Justice for the Third Circuit, the applicants seek a stay of the Court of Appeals's mandate in this case, pending their filing a petition for certiorari.   See 28 U. S. C. § 2106.   In the decision from which applicants intend to seek review, 14 F. 3d 848 (CA3 1994), the Court of Appeals held that the District Court's order allowing applicants to reopen the record in their facial constitutional challenge to Pennsylvania's Abortion Control

Act, 18 Pa. Cons. Stat. §§ 3203–3220 (1990 and Supp. 1993), and continuing its order enjoining the Commonwealth from enforcing various provisions of that statute, see 822 F. Supp. 227 (ED Pa. 1993), was inconsistent with both the mandate of this Court in *Planned Parenthood of Southeastern Pennsylvania* v. *Casey,* 505 U. S. 833, and that of the Third Circuit on remand, see 978 F. 2d 74 (1992).[1]   For the reasons set out below, I decline to stay the mandate of the Court of Appeals.

The conditions that must be shown to be satisfied before a Circuit Justice may grant such an application are familiar: a likelihood of irreparable injury that, assuming the correctness of the applicants' position, would result were a stay not issued; a reasonable probability that the Court will grant certiorari; and a fair prospect that the applicant will ultimately prevail on the merits, see generally *Rostker* v. *Goldberg,* 448 U. S. 1306, 1308 (1980) (Brennan, J., in chambers). The burden is on the applicant to "rebut the presumption that the decisions below—both on the merits and on the proper interim disposition of the case—are correct."   *Ibid.*

With respect to the first consideration, the applicants assert that enforcement of the pertinent provisions of the Abortion Control Act will, for a "large fraction," *Casey,* 505 U. S., at 895, of the affected population, interpose a "substantial obstacle," *id.,* at 877, to the exercise of the right to reproductive freedom guaranteed by the Due Process Clause and affirmed in this Court's *Casey* opinion.[2]   I have no difficulty concluding that such an imposition, if proven, would qualify as "irreparable injury," and support the issuance of a stay if

---

[1] The Third Circuit panel also denied a motion, substantially identical to the one presented here, to stay its mandate.

[2] For the purposes of this opinion, I join the applicants and the courts below in treating the joint opinion in *Planned Parenthood of Southeastern Pa.* v. *Casey,* see 505 U. S., at 843 (opinion of O'CONNOR, KENNEDY, and SOUTER, JJ.) as controlling, as the statement of the Members of the Court who concurred in the judgment on the narrowest grounds.   See *Marks* v. *United States,* 430 U. S. 188 (1977).

the other factors favored the applicants' position. Those other factors, however, point the other way.[3]

The core of the applicants' submission is that the Court of Appeals fundamentally misread our opinion and mandate in *Casey* in determining that the District Court erred in reopening the record and continuing its injunction against enforcement of the Pennsylvania statute.[4] Although applicants are right as a general matter in arguing that this Court has a special interest in ensuring that courts on remand follow the letter and spirit of our mandates, see, *e. g.*, *In re Sanford Fork & Tool Co.*, 160 U. S. 247, 255–256 (1895), I am not convinced (nor, I believe, would my colleagues be) that the Court of Appeals's opinion represents such an arguable departure from our mandate as to warrant discretionary review or, in the end, an award of the relief the applicants seek.

---

[3] I note in this regard that the availability of further opportunities to test the constitutionality of the statute mitigates somewhat the quantum of harm that might ensue. The Court of Appeals acknowledged, correctly, that the applicants or other potential litigants remain free to test the constitutionality of the Act "as applied." See 14 F. 3d 848, 862, nn. 18, 21 (CA3 1994). Since I am convinced that a majority of this Court would likely hold a further facial challenge by the parties in this case to be precluded by the opinion and mandate in *Casey*, there is no occasion to consider here the Court of Appeals's broader assertion that, even in cases where a statute's facial validity depends on an empirical record, see *Fargo Women's Health Organization* v. *Schafer*, 507 U. S. 1013 (1993) (O'CONNOR, J., concurring in denial of stay), a decision rejecting one such challenge must be dispositive as against all other possible litigants. Also potentially relevant to the irreparable injury calculus is the District Court's "considerable doubt" whether the Commonwealth is, in fact, prepared to begin immediate enforcement of several of the disputed provisions. See 822 F. Supp. 227, 237 (ED Pa. 1993).

[4] The applicants' contention that the Court of Appeals's ruling "conflicts" with decisions recognizing district court discretion to decide matters left open by a mandate, see, *e. g.*, *Quern* v. *Jordan*, 440 U. S. 332, 347, n. 18 (1979), cf. this Court's Rule 10.1(c), amounts to no more than a restatement of their basic claim, *i. e.*, that the District Court's reading of *Casey*, and not the Third Circuit's, was the correct one.

I note that I am not as certain as the Court of Appeals was that the District Court here has defied the terms of our remand in a manner that justifies comparison to *Aaron* v. *Cooper*, 163 F. Supp. 13 (ED Ark.), rev'd, 257 F. 2d 33 (CA8), aff'd, *Cooper* v. *Aaron*, 358 U. S. 1 (1958). The letter of our *Casey* opinion is not entirely hard edged. We remanded for "proceedings consistent with this opinion, including consideration of the question of severability," 505 U. S., at 901, thereby allowing for the possibility (as applicants strenuously argue) that there might be something for the courts below to determine beyond the severability from the body of the statute of the provisions held constitutionally invalid.[5] More than once, we phrased our conclusion that particular provisions withstood facial challenge under the Due Process Clause in terms of "the record" before us in the case, see *id.*, at 884, 887, 901; see also *id.*, at 926 (BLACKMUN, J., concurring in part, concurring in judgment in part, and dissenting in part) (suggesting that evidence could be adduced "in the future" that would establish the invalidity of the provisions and arguing that the joint opinion did not "rul[e] out [that] possibility").

The Court of Appeals's construction of the opinion and mandate, however, is the correct one. Although we acknowledged in *Casey* that the precise formulation of the standard for assessing constitutionality of abortion regulation was, in some respects, novel, see 505 U. S., at 876–877; see also 14 F. 3d, at 853–854 (acknowledging that Court had modified the Third Circuit's "undue burden" test), we did not remand the case to the lower courts for application of the proper standard, as is sometimes appropriate when a new legal standard is announced, see, *e. g., Lucas* v. *South Carolina Coastal Council*, 505 U. S. 1003 (1992). Instead,

---

[5] After the Court of Appeals had held that the invalid provisions could be severed from the rest of the statute, see 978 F. 2d 74 (CA3 1992), that court itself remanded to the District Court for "such further proceedings as may be appropriate," *id.*, at 78.

we undertook to apply the standard to the Pennsylvania statute, upholding the constitutionality of its core provisions governing informed consent, recordkeeping, and parental consent, while ruling that the husband-notification requirement, on its face, imposed a constitutionally intolerable burden on the freedom of women to choose abortion. 505 U. S., at 887–898. Significantly, none of the five opinions took the position that the record was inadequate in a way that would counsel leaving those judgments to the District Court in the first instance. Cf., e. g., *McCleskey* v. *Zant*, 499 U. S. 467, 506, 523–528 (1991) (Marshall, J., dissenting). Thus, the references to "this record," combined with our readiness to decide the validity of the challenged provisions under the "undue burden" standard, are plausibly understood as reflecting two conclusions: (1) that litigants are free to challenge similar restrictions in other jurisdictions, as well as these very provisions as applied, see *Fargo Women's Health Organization* v. *Schafer*, 507 U. S. 1013 (1993) (O'CONNOR, J., concurring in denial of stay); and (2) that applicants had been given a fair opportunity to develop the record in the District Court.

Indeed, the District Court's error in rejecting the latter conclusion deserves a word of comment. The District Court reasoned that because our opinion in *Casey* altered the "rules of the game," it would be unjust to dispose of an "undue burden" challenge on the basis of a record developed for purposes of a challenge based on "strict scrutiny." See 822 F. Supp., at 235–236. But even if this reasoning were not in tension with the approach ultimately taken in the *Casey* opinion, the applicants do not seriously suggest that the vitality of the "strict scrutiny" test was free from uncertainty at the time this case was brought in the District Court or that they lacked incentive to compile a record to support the invalidation of the challenged provisions under a less strict standard of review. The original District Court opinion, 686 F. Supp. 1089 (ED Pa. 1988), contains 287 detailed findings

of fact and carries every indication that the applicants were given broad latitude to introduce evidence, call witnesses, and elicit testimony about the potential effects of the challenged provisions on the reproductive freedom of women.

In addition to these reasons for thinking there is no reasonable probability of review and no fair prospect of reversing the Court of Appeals, one other point bears mention. In continuing its order enjoining enforcement of various statutory provisions, the District Court concluded that the evidence applicants were seeking to introduce raised only a "plausible likelihood" of prevailing in their renewed facial challenge to the statute. 822 F. Supp., at 238. It was at least unusual for a District Court to enjoin enforcement of a statute, the last word on which was the recent judgment of this Court upholding its constitutionality, on a showing of "plausible likelihood" of success. This element of the case would certainly, and properly, influence my colleagues' decision whether to review the judgment of the Court of Appeals, as well as their view of its merits if review were granted.

The application for stay of mandate is denied.